UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
THE NATIONAL RETIREMENT FUND and the
BOARD OF TRUSTEES OF THE NATIONAL
RETIREMENT FUND, each on behalf of the
Legacy Plan of the National Retirement Fund,

                    Plaintiffs,

                    -vs-

CAMI HOTEL INVESTMENTS, LLC, CAMI
HOTEL INVESTMENTS II, LLC, and THE
HOTEL GROUP OPPORTUNITY FUND III,
LLC,

                    Defendants.
-------------------------------------------------------------x

Civil Action No.:   21-cv-5495

**COMPLAINT**

# COMPLAINT

Plaintiffs, the National Retirement Fund (the "Fund"), a multiemployer pension benefit fund, and the Fund's Board of Trustees, fiduciaries of the Fund (the "Trustees" and together with the Fund, the "Plaintiffs"), each on behalf of the Legacy Plan of the National Retirement Fund (the "Plan"), by their attorneys Schulte Roth & Zabel LLP, as and for their complaint against Defendants Cami Hotel Investments, LLC ("Cami"), Cami Hotel Investments II, LLC ("Cami II"), and the Hotel Group Opportunity Fund III, LLC ("Opportunity Fund III"), respectfully allege as follows:

## NATURE OF ACTION

1. Plaintiffs bring this action under Sections 502(a)(3) and 4301(a) of the Employee Income Security Act of 1974, *as amended* ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1451(a) on behalf of the Plan, to enforce the provisions of a multiemployer employee pension plan and to collect withdrawal liability, liquidated damages, interest, attorneys' fees and costs.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to Sections 502(a)(3), (e)(1) and (f) and 4301(a), (b) and (c) of ERISA, 29 U.S.C. § 1132(a)(3), (e)(1) and (f) and 1451(a), (b) and (c).

3. Venue is properly laid in this Court pursuant to Section 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. § 1132(e)(2) and 1451(d), because the Fund and the Plan are administered in part in New York County and Westchester County in the State of New York.

## THE PARTIES

<u>The Fund</u>

4. The Fund is a Taft-Hartley trust fund with the Trustees selected by the labor organization Workers United and employers that contribute to the Fund.

5. The Fund was established and is maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 186(c)(5).

6. The Fund is governed by an agreement and declaration of trust.

7. The Plan is a multiemployer plan within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).  Prior to January 1, 2015, the Plan was known as the Pension Plan of the National Retirement Fund.

8. The Fund, through its Trustees, sponsors and administers the Plan.

9. The Trustees are fiduciaries of the Plan within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are authorized to bring this action under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).

Cami

10. Upon information and belief, Cami is a limited liability company organized under Delaware law with its principal place of business in Edmonds, Washington.

11. Non-party THG Capital, LLC ("THG Capital") is the manager of Cami.

Cami II

12. Upon information and belief, Cami II is a limited liability company organized under Delaware law with its principal place of business in Edmonds, Washington.

Opportunity Fund III

13. Upon information and belief, Opportunity Fund III is a limited liability company organized under Delaware law with its principal place of business in Edmonds, Washington.

14. Upon information and belief, as of August 21, 2020, Opportunity Fund III is, at least, the 75% owner of Cami.

15. Upon information and belief, as of August 21, 2020, Opportunity Fund III is the 100% owner of Cami II.

16. According to a filing with the Securities and Exchange Commission by Morgan Stanley Bank of America Merrill Lynch Trust 2016-C28, dated February 4, 2016 (Registration File No. 333-206847-01), which describes, *inter alia*, a mortgage loan between Morgan Stanley Mortgage Capital Holdings LLC as the mortgage loan seller and Cami II as the borrower (the "SEC Filing"), Cami II "is owned and controlled by Hotel Group Opportunity Fund III, LLC."

17. At all relevant times, Opportunity Fund III was a "trade or business under common control" with Cami II pursuant to Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), Section 414(c) of the Code and the regulations promulgated thereunder.

18. According to the SEC Filing, Opportunity Fund III "is a fund sponsored by The Hotel Group and [THG Capital]."

19. Upon information and belief, The Hotel Group (hereinafter "THG") is a trade name for The Hotel Group, Incorporated.

20. Upon information and belief, THG and THG Capital are agents of Opportunity Fund III and make decisions on behalf of Opportunity Fund III.

## FACTUAL BACKGROUND

21. Prior to May 15, 2007, the employer of employees at the hotel located at 1111 Lakeside Avenue, Cleveland, Ohio (the "Hotel"), had an obligation to contribute to the Fund, and its predecessor, the UNITE HERE National Retirement Fund (the "Predecessor"), on behalf of "all restaurant, banquet and kitchen employees and housekeeping employees, excluding executives, department heads, or managers, assistant department heads or managers, superintendents, supervisors, assistant supervisors, administrative and front line employees, confidential employees, on call employees . . . house officers, employees represented by any other labor organization, linen and laundry personnel, engineer/maintenance employees and personnel having the right to hire and fire, for the purpose of collective bargaining with respect to wages, hours, and general conditions of employment and for the adjustment of complaints, controversies and grievances" (collectively, the "Bargaining Unit Employees"), pursuant to collective bargaining agreements with the union representing the Bargaining Unit Employees.

22. On May 15, 2007, the Hotel was purchased and acquired by Cami and/or Opportunity Fund III.

23. According to the SEC Filing, the Hotel was "acquired by [Opportunity Fund III] in 2007."

24. According to a letter from Randy Meyer, Chief Financial Officer of the Hotel Group Holdings, LLC ("THG Holdings") to the Fund's Predecessor's office, dated June 1, 2007, Cami purchased the Hotel on May 15, 2007, and Cami was the new employer for the Bargaining Unit Employees.

25. Although Mr. Meyer identified himself as Chief Financial Officer of THG Holdings in his June 1, 2007 letter, he sent the letter on THG letterhead.

26. In his June 1, 2007 letter, Mr. Meyer identified THG Holdings as the managing agent for Cami and made no reference to THG Capital.

27. Beginning in June 2007, and throughout the relevant time period, employees of THG corresponded with the Fund and its Predecessor, and regarding the Bargaining Unit Employees, on behalf of Defendants, through Cami. This correspondence was at times sent by THG Holdings, at times sent by THG, and at times sent from both entities.

28. For example, as set forth above, Mr. Meyer wrote his June 1, 2007 letter on THG letterhead, but signed the letter as the Chief Financial Officer of THG Holdings.

29. As another example, personnel from both THG and THG Holdings sent e-mails to the Fund and regarding the Bargaining Unit Employees from the same domain name, "thehotelgroup.com." In 2015, Mr. Meyer sent an e-mail to the Fund from the domain name thehotelgroup.com and identified himself as an employee of THG Holdings in his signature block. In March 2019, Brian Latture sent an e-mail to the union representing the Bargaining Unit Employees from the domain name thehotelgroup.com and identified himself as the Senior Vice President of Operations at THG in his signature block.

30. THG employees engaged in collective bargaining on behalf of Cami to negotiate collective bargaining agreements with the union representing the Bargaining Unit Employees,

including negotiating the particular language of such agreements (the "Collective Bargaining Agreements").

31. Cami, under its own name and at times under trade names including DoubleTree Hotel Cleveland Downtown Lakeside, was a party to each Collective Bargaining Agreement. A THG employee, or a THG employee's authorized signatory, signed each of the Collective Bargaining Agreements. Lara Latture, in her capacity as Executive Vice President of THG and subsequently as Chief Operating Officer of THG, signed several Collective Bargaining Agreements, a memorandum of agreement and an agreement, executed by Ms. Latture on December 3, 2010, to contribute additional contributions under the Fund's rehabilitation plan adopted pursuant to the Pension Protection Act of 2006.

32. As a party to the Collective Bargaining Agreements, Cami had an obligation to contribute to the Fund, including to the Fund's Predecessor, on behalf of the Bargaining Unit Employees.

33. Cami began participating in the Plan by contributing to the Fund's Predecessor as of May 15, 2007. Cami continued to contribute to the Fund's Predecessor, and subsequently the Fund, until February 2016.

34. Throughout the relevant time period, Cami operated under its own name and under several trade names including, before 2009, Holiday Inn Select City Centre Lakeshore, and after 2009, DoubleTree Hotel Cleveland Downtown Lakeside and DoubleTree Cleveland Lakeshore.

35. Cami is an employer within the meaning of Sections 3(5), (11), (12) and 4001(b) of ERISA, 29 U.S.C. §§ 1002(5), (11), (12) and Section 301(a) of the LMRA, 29 U.S.C. § 185(a).

36. In September 2015, Mr. Meyer requested from the Fund an estimate of potential withdrawal liability for the employer of the Bargaining Unit Employees. Mr. Meyer sent the request via e-mail, and signed such e-mail as Chief Financial Officer of THG Holdings. The Fund provided Mr. Meyer with the requested estimate of potential withdrawal liability in October 2015.

37. On February 1, 2016, Ms. Latture signed a new Collective Bargaining Agreement on behalf of Cami. As was the case with prior Collective Bargaining Agreements, the new Collective Bargaining Agreement obligated Cami to contribute to the Fund on behalf of the Bargaining Unit Employees.

38. In February 2016, Cami II began contributing to the Fund on behalf of the Bargaining Unit Employees. Cami II continued to contribute to the Fund thereafter, under its own name and under a DoubleTree trade name. Cami II's contribution checks listed "Cami Hotel Investments II, LLC d/b/a DoubleTree Ho" as the payer.

39. Following February 2016, when Cami II began contributing the Fund, the Fund did not receive any further contributions from Cami.

40. At no point in time between when the Fund provided Mr. Meyer with the requested estimate of potential withdrawal liability in October 2015 and when Cami II began contributing to the Fund in February 2016 did Cami, Cami II, THG, THG Holdings or THG Capital inform the Fund that there was a new employer for the Bargaining Unit Employees.

41. Beginning no later than February 2016, due to, *inter alia*, Cami II and Cami's interrelation of operations, common or substantially identical management, centralized control of labor relations, and common ownership, Cami II was an alter ego of, or a single employer with, Cami.

42. Beginning no later than February 2016, Cami II became an employer within the meaning of Sections 3(5), (11), (12) and 4001(b) of ERISA, 29 U.S.C. §§ 1002(5), (11), (12) and Section 301(a) of the LMRA, 29 U.S.C. § 185(a).

43. Cami and Cami II, under their own names and under various trade names, contributed to the Fund and its Predecessor from May 2007 until withdrawing from the Fund on December 1, 2019 (the "Complete Withdrawal").

44. On May 13, 2020, Defendants, through Cami, identified THG Capital as the manager of Cami in response to information the Fund had requested pursuant to Section 4219(a) of ERISA, 29 U.S.C. 1399(a). These responses were signed by Mr. Meyer as the Chief Financial Officer of Cami. At no time, however, did THG Capital correspond with the Fund or its Predecessor regarding Cami.

45. By letter dated June 18, 2020, the Fund assessed Defendants, through Cami, with withdrawal liability in the amount of $8,024,933.00, payable in 80 quarterly installments of $51,599.79 each, the first of which was due to the Fund by August 1, 2020 (the "Assessment").

46. By sending Cami the Assessment, the Fund also gave notice of the Assessment to the Defendants pursuant to Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1) and applicable law.

47. By virtue of Cami II's status as the alter ego of or single employer with Cami, Cami and Cami II are jointly and severally liable under the Assessment.

48. By virtue of Cami II and Opportunity Fund III's status as trades or businesses under common control, Opportunity Fund III is also jointly and severally liable with Cami and Cami II under the Assessment.

49. Defendants did not pay the first quarterly withdrawal liability installment under the Assessment, which was due on August 1, 2020.

50. By letter dated August 5, 2020, the Fund informed Defendants, through Cami, that it had not received the quarterly withdrawal liability installment payment due on August 1, 2020, and that the overdue amount would accumulate interest until the Fund received the payment.

51. By letter dated August 24, 2020, Defendants, through Cami's counsel, requested that the Fund review the Assessment. Such request for review alleged, *inter alia*, that the Fund had made certain actuarial miscalculations.

52. Defendants did not pay the second quarterly withdrawal liability installment under the Assessment, which was due on November 1, 2020.

53. By letter dated December 21, 2020 the Fund responded to Defendants' request for review of the Assessment and upheld the Assessment.

54. Defendants did not pay the third quarterly withdrawal liability installment under the Assessment, which was due on February 1, 2021.

55. On February 17, 2021, Defendants, through Cami's counsel, initiated arbitration against the Fund to dispute the Assessment, pursuant to Section 4221(a) of ERISA, 29 U.S.C. § 1401(a), (the "Arbitration"). The issues raised in Cami's request for review were reiterated in its Demand for Arbitration.

56. The Arbitration is currently pending.

57. As of the date of this Complaint, no arbitrator has been selected in the Arbitration, and there has been no order or ruling in the Arbitration compelling the Fund to modify the Assessment.

58. By letter dated March 18, 2021, the Fund informed Defendants, through Cami's counsel, that it still had not received the quarterly withdrawal liability installment payment due on August 1, 2020, as well as the subsequent quarterly withdrawal liability installment payments due on November 1, 2020 and February 1, 2021.

59. As of the date of the Fund's March 18, 2021 letter, the total principal amount of missed quarterly withdrawal liability installment payments was $154,799.37.

60. The Fund's March 18, 2021 letter informed Defendants, through Cami's counsel, that if the Fund did not receive the missed quarterly withdrawal liability installment payments, the Fund would file an action in federal court to collect the missed quarterly withdrawal liability installment payments, plus interest, liquidated damages, and attorneys' fees and costs. The Fund also informed Defendants, through Cami's counsel, that it would seek a court order compelling payment of future quarterly withdrawal liability installment payments.

61. On April 9, 2021, the Fund, through counsel, reiterated to Defendants, through Cami's counsel, that if the Fund did not receive the missed quarterly withdrawal liability installment payments, the Fund would file an action in federal court to collect the missed quarterly withdrawal liability installment payments, plus interest, liquidated damages, and attorneys' fees and costs. The Fund, through counsel, also reiterated to Defendants, through Cami's counsel, that the Fund would seek a court order compelling payment of future quarterly withdrawal liability installment payments.

62. On April 21, 2021, the Fund, through counsel, on a telephone call with Cami's counsel, again reiterated that if the Fund did not receive the missed quarterly withdrawal liability installment payments, the Fund would file an action in federal court to collect the missed quarterly withdrawal liability installment payments, plus interest, liquidated damages, and

attorneys' fees and costs. The Fund, through counsel, also reiterated to Defendants, through Cami's counsel, that the Fund would seek a court order compelling payment of future quarterly withdrawal liability installment payments.

63. Defendants did not pay the fourth quarterly withdrawal liability installment under the Assessment, which was due on May 1, 2021.

64. As of the date of this Complaint, Defendants have failed to pay, and the Fund has not received, Defendants' quarterly withdrawal liability installment payments that were due on August 1, 2020, November 1, 2020, February 1, 2021, and May 1, 2021.

65. Defendants' next quarterly withdrawal liability installment is due on August 1, 2021.

66. Upon information and belief, Defendants will not pay any quarterly withdrawal liability installment payments set forth in the Assessment, absent a Court order requiring them to do so.

**AS AND FOR A FIRST CLAIM AGAINST DEFENDANTS**
**(For the Installment Payments Due August 1, 2020, November 1, 2020, February 1, 2021, and May 1, 2021 for the Complete Withdrawal, Plus Interest, Liquidated Damages and Attorneys' Fees and Costs)**

67. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 66 of this Complaint with the same force and effect as if set forth at length here.

68. As a result of, *inter alia*, Cami II and Cami's interrelation of operations, common or substantially identical management, centralized control of labor relations, and common ownership, Cami II was an alter ego of, or a single employer with, Cami, and therefore Cami and Cami II are jointly and severally liable for purposes of withdrawal liability.

69. Pursuant to Sections 502(g) and 3001(b)(1) of ERISA, 29 U.S.C. §§ 1132(g) and 1301(b)(1), as a trade or business under common control with Cami II, Opportunity Fund III is

treated as a single employer with Cami II for all purposes under Title IV of ERISA, including withdrawal liability.

70. By virtue of Cami II's relationship with Cami as the alter ego of, or a single employer with, Cami, and Cami II and Opportunity Fund III's relationship as trades or businesses under common control, Defendants are jointly and severally liable for purposes of withdrawal liability.

71. The Fund is entitled to collect from Defendants the full and immediate payment of the quarterly withdrawal liability installment payments in the principal amount of $51,599.79 each that were due on August 1, 2020, November 1, 2020, February 1, 2021, and May 1, 2021, for a total of $206,399.16.

72. By failing to pay the withdrawal liability installment payments due on August 1, 2020, November 1, 2020, February 1, 2021, and May 1, 2021, Defendants are in violation of Section 4219(c)(2) of ERISA, 29 U.S.C. § 1399(c)(2).

73. Because Defendants failed to pay the payments due August 1, 2020, November 1, 2020, February 1, 2021, and May 1, 2021, Defendants are jointly and severally liable to the Fund for the full and immediate payment of the quarterly withdrawal liability installments in the principal amount of $51,599.79 each (for a total of $206,399.16), pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

74. Because Defendants failed to pay the quarterly withdrawal liability installments due on August 1, 2020, November 1, 2020, February 1, 2021, and May 1, 2021, Defendants are jointly and severally liable to the Fund for interest at the rate of 1% per month (or part thereof), non-compounded, calculated pursuant to the Fund's Collections Policy and Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

75. Because Defendants failed to pay the quarterly withdrawal liability installments due on August 1, 2020, November 1, 2020, February 1, 2021, and May 1, 2021, Defendants are jointly and severally liable to the Fund for liquidated damages calculated pursuant to the Fund's Collections Policy and Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

76. Because Defendants failed to pay the quarterly withdrawal liability installments due on August 1, 2020, November 1, 2020, February 1, 2021, and May 1, 2021, Defendants are jointly and severally liable to the Fund for attorneys' fees and costs associated with this action pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

### AS AND FOR A SECOND CLAIM AGAINST DEFENDANTS
**(For Injunctive Relief)**

77. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 76 of this Complaint with the same force and effect as if set forth at length here.

78. Because, upon information and belief, Defendants will not pay future quarterly withdrawal liability installment payments absent a Court order requiring Defendants to do so, Plaintiffs are entitled to an injunction requiring Defendants to pay timely all quarterly withdrawal liability installment payments subsequent to the May 1, 2021 quarterly withdrawal liability installment payment, as they become due.

**WHEREFORE**, Plaintiffs respectfully request the following judgment in favor of Plaintiffs and against Defendants:

A. That Defendants be held jointly and severally liable for the missed quarterly withdrawal liability installment payments due on August 1, 2020, November 1, 2020, February 1, 2021, and May 1, 2021;

B. That Defendants be held jointly and severally liable to the Fund for the full and immediate payment of the quarterly withdrawal liability installments that become due

to the Fund between the date of this Complaint and the date the Court issues a judgment;

C.     That Defendants be held jointly and severally liable for the full and immediate amount of the interest attributable to the missed quarterly withdrawal liability installment payments at the rate of one percent (1%) per month (or part thereof), non-compounded, calculated pursuant to the Fund's Collections Policy and Section 502(g) of ERISA, 29 U.S.C. § 1132(g);

D.     That Defendants be held jointly and severally liable for liquidated damages calculated pursuant to the Fund's Collections Policy and Section 502(g) of ERISA, 29 U.S.C. § 1132(g);

E.     That Defendants be held jointly and severally liable for the Fund's costs and expenses incurred in connection with this action and the Fund's efforts to collect the missed quarterly withdrawal liability installment payments, including its reasonable attorneys' fees, pursuant to Sections 502(g) and 4301(e) of ERISA, 29 U.S.C. §§ 1132(g) and 1451(e);

F.     Injunctive relief or an order requiring Defendants to pay timely all quarterly withdrawal liability installment payments subsequent to the May 1, 2021 withdrawal liability installment payment as they become due;

G.     That Plaintiffs shall have such other and further relief as the Court shall deem just and proper.

Dated:  June 23, 2021
New York, New York

        SCHULTE ROTH & ZABEL LLP

        By: */s/ Ronald E. Richman*
            Ronald E. Richman
            Andrew B. Lowy

            919 Third Avenue
            New York, NY  10022
            Telephone: 212.756.2000
            E-mail: ronald.richman@srz.com
                     andrew.lowy@srz.com

        *Attorneys for Plaintiffs*